**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

---

ARIANE ROSE VILLARIN, on behalf of
herself and all others similarly situated,

*Plaintiff,*

*v.*

Case No. 1:23-cv-00097-MRB

HEALTH CARE FACILITY MANAGEMENT,
LLC, d/b/a COMMUNICARE FAMILY OF
COMPANIES, and WORLDWIDE
HEALTHSTAFF SOLUTIONS, LLC,

*Defendants.*

---

**MEMORANDUM OF LAW SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL, PRELIMINARY CLASS CERTIFICATION,**
**APPOINTMENT OF CLASS COUNSEL, AND OTHER RELIEF**

KATZ BANKS KUMIN LLP
Hugh Baran
Susanna Barron

KAKALEC LAW PLLC
Patricia Kakalec

THE LAW FIRM OF SHIHAB & ASSOCIATES,
CO., LPA
Ghassan "Gus" M. Shihab

THE LAW OFFICES OF MAGEN E. KELLAM,
P.A.
Magen E. Kellam

TOWARDS JUSTICE
Juno Turner

*Attorneys for Plaintiff and the Putative Class and
Collective*

1

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................I

TABLE OF AUTHORITIES ...................................................................................... IV

SUMMARY OF ARGUMENT .................................................................................... 1

INTRODUCTION........................................................................................................ 2

BACKGROUND .......................................................................................................... 2

I.    SUMMARY OF PLAINTIFF'S ALLEGATIONS ................................................ 2

II.    PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS ........................... 4

III.    THE SETTLEMENT AGREEMENT ................................................................... 5

    A.    *Settlement Class and Collective and Released Claims* ................................. 5

    B.    *Monetary Relief and Settlement Allocations* ............................................... 6

    C.    *Full Relief of Alleged Debt* ........................................................................ 7

    D.    *Form and Method of Notice* ........................................................................ 7

    E.    *Opt-Out, Objection, and Exclusion* ............................................................ 8

    F.    *Notice Period, Final Approval, and Payments.* ........................................... 8

STANDARD OF REVIEW ......................................................................................... 9

ARGUMENT ............................................................................................................. 10

I.    THE COURT SHOULD CERTIFY THE RULE 23 SETTLEMENT CLASS.................. 10

    A.    *The Proposed Class is Sufficiently Numerous.*............................................ 11

        The Proposed Class has 220 members and meets the requirements of numerosity.

    B.    *The Proposed Class Shares Common Questions of Law and Fact.* ............ 11

        The allegations in this action challenge similar conduct and policies and stem from nearly identical contractual arrangements between Class Members and Defendants.

    C.    *The Proposed Class Representative is Typical of the Proposed Class.* ....... 12

        Plaintiffs and the Settlement Class Members' alleged harm arises from the same course of conduct and rely on the same legal theory to challenge this alleged harm.

    D.    *The Proposed Class Representative and Class Counsel are Adequate.* ...... 12

        Plaintiffs and Class Counsel are adequate because their claims and legal interests are aligned with the members of the Settlement Classes.

    E.    *Common Issues Predominate Over Any Individual Issues and the Class Action Mechanism is Superior.*.................................................................. 14

    Common facts concerning contractual arrangements between Class Members and Defendants would drive resolution of this litigation and support predominance for settlement purposes. T

II.    THE SETTLEMENT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION FOR THE CLASS.............................................................................................. 15

    A.    *Plaintiff and Class Counsel Have Adequately Represented the Class and Support the Proposal - Rule 23(e)(2)(A) and UAW Factor 5.*............................................. 16

Plaintiffs and Class Counsel have fulfilled their duties to act on behalf of the proposed Settlement Class.

B.  *The Proposal Was Negotiated at Arm's Length Without Fraud or Collusion - Rule 23(e)(2)(B) and UAW Factor 1.* ........................................................................................... 17

The parties engaged in significant informal discovery and mediation, and continued arms-length negotiations for several months following mediation before reaching agreement on key terms.

C.  *The Proposal Provides Adequate Relief to the Settlement Class – Rule 23(e)(2)(C) and UAW Factors 2-4.* ................................................................................................ 17
    1.  The Settlement Represents a Fair Compromise that Provides Significant Monetary and Non-Monetary Benefits to the Class. ........................................................................ 17

The Settlement provides significant monetary relief for Class Members, including partial reimbursement of money paid to Defendants, pro rata payments based on length of employment and additional valuable non-monetary relief.

    2.  Costs, Risks, & Likely Duration of Litigation Support Approval. ............................. 19

While both parties feel strongly that they will prevail, the relief provided through this Settlement is even more meaningful given the uncertain nature of this case

    3.  The Proposed Settlement is Effective and Equitable – Rule 23(e)(2)(C)(ii), (D). ........ 20

Payments will be made directly to Settlement Class Members and permit Settlement Class Members to easily request an alternative. I

    4.  The terms of any proposed award of attorney's fees, including timing of payment, are fair - Rule 23(e)(2)(C)(iii). ................................................................................... 23

Class Counsel anticipates requesting no more than one-third of the Gross Settlement Amount, which is in line with what courts typically approve.

    5.  There are no agreements required to be identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv). .................................................................................................... 23
    6.  The reaction of the absent Class Members will be known after notice and the public interest supports settlement – *UAW* Factors 6 and 7 ........................................... 24
III.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN AND THE CLASS NOTICES. ........................................................................................................ 24

The proposed notice is the best notice practicable under the circumstances, and informs Settlement Class Members of their rights and obligations.

IV.  THE COURT SHOULD AUTHORIZE FLSA NOTICE. ............................................... 25

Putative Settlement Collective Members were all subject to form contracts and workplace policies implemented by Defendants, and this set of common facts binds the proposed Settlement Collective together.

V.  THE SETTLEMENT RESOLVES A *BONA FIDE* FLSA DISPUTE ......................26

Here, given the mixed case law and contested damages, there are legitimate questions about the existence and extent of Defendants' FLSA liability.

VI.   THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR AND
       SCHEDULE A FINAL FAIRNESS HEARING........................................................................ 28
       The proposed Settlement Administrator was selected as the best and most cost-effective
option through a bid solicitation process.

**CONCLUSION** ............................................................................................................... **28**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Anheuser-Busch Companies, Inc.*, No. 2:10-cv-826, 2012 WL 1058961, at *3–4 (S.D. Ohio Mar. 28, 2012) ............................................................................................................... 11

*Bailey v. Verso Corp.*, 337 F.R.D. 500, 507 (S.D. Ohio 2021) ..................................................... 14

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) .............................................. 12, 15

*Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 151 (S.D. Ohio 1992) ................................................... 17

*Butler v. Vill. Caregiving, LLC*, No. 2:22-CV-4359, 2025 WL 1513334, at *1 (S.D. Ohio May 28, 2025) ...................................................................................................................................... 27

*Campbell v. Bukhari Grp. LLC*, No. 22-CV-2813 (PK), 2025 WL 1874485, at *5 (E.D.N.Y. July 8, 2025) ...................................................................................................................................... 13

*Carmen v. Health Carousel, LLC*, No. 1:20-cv-313, 2025 WL 892586, at *8 (S.D. Ohio Mar. 24, 2025) ......................................................................................................... 12, 18, 21, 27

*Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) ............................................................................................................. 20

*Cataline v. Beechmont Brewing, LLC*, No. 1:23-CV-621, 2024 WL 4313715, at *1 (S.D. Ohio Sept. 26, 2024) ...................................................................................................................... 27

*Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023) .... 10, 25, 26

*Clark v. Miller Valentine Partners Ltd.*, No. 1:20-cv-295, 2023 WL 5087233, at *5 (S.D. Ohio Aug. 8, 2023) ........................................................................................................................ 17

*Clark v. Pizza Baker, Inc.*, No. 2:18-CV-157, 2022 WL 16554651, at *4 (S.D. Ohio Oct. 31, 2022) ...................................................................................................................................... 19

*Combs v. TruGreen Ltd. P'ship*, No. 1:08-cv-489, 2010 WL 11636094, at *6 (S.D. Ohio Sept. 2, 2010); .................................................................................................................................... 22

*Cummins v. Midmark Corp.*, No. 3:23-CV-277, 2024 WL 3405458, at *1 (S.D. Ohio July 9, 2024) ...................................................................................................................................... 27

*Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2021 WL 1214501, at *12 (E.D. Ky. Mar. 30, 2021) ...................................................................................................................................... 22

*Emch v. Cmty. Ins. Co.*, No. 1:17-CV-00856, 2021 WL 9096702, at *1 (S.D. Ohio Aug. 9, 2021) .............................................................................................................................................. 22

*Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-02600-SHL-tmp, 2023 WL 6466398, at *5 (W.D. Tenn. Oct. 4, 2023) ............................................................................. 21

*Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. 2020) ... 16

*Garner Props. & Mgmt. v. City of Inkster*, 2020 WL 4726938, No. 17-cv-13960, at *10 (E.D. Mich. Aug. 14, 2020) .......................................................................................................... 23

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 26, 290 (6th Cir. 2016) ................................ 24

*Gilstrap v. Sushinati LLC*, No. 1:22-cv-434, 2024 WL 2197824, at *1 (S.D. Ohio May 15, 2024) ...................................................................................................................................... 27

*Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ................................................................. 22

*Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007) .................................................... 24

*Hatmaker v. PJ Ohio, LLC*, No. 3:17-CV-146, 2019 WL 5725043, at *2 (S.D. Ohio Nov. 5, 2019) ...................................................................................................................................... 26

*Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2023 WL 8811499, at *10 (S.D. Ohio Dec. 20, 2023) .... ................................................................................................................................... 10, 21

*Highman v. Northstar Cafe Easton, LLC*, No. 2:23-CV-1757, 2025 WL 388709, at *4 (S.D. Ohio Feb. 4, 2025) (*Highman I*) ................................................................................................ 25

*Highman v. Northstar Cafe Easton, LLC*, No. 2:23-CV-1757, 2025 WL 634439, at *3 (S.D. Ohio Feb. 27, 2025) (*Highman II*) ...................................................................................... 25, 27

*Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 3446596, at *6 (E.D. Mich. Aug. 11, 2017) ...................................................................................................................................... 28

*Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-cv-00411, 2023 WL 3204684, at *3 (S.D. Ohio May 2, 2023) .......................................................................................................................... 16

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F.Supp.2d 259, 268–69 (S.D.N.Y. 2012) ................................................................................................................... 20

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ......................... 17

*In re Nationwide Fin. Servs. Litig.,* No. 2:08-CV-00249, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009) ...................................................................................................................... 20

*In re Netflix Priv. Litig.,* No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ...................................................................................................................................... 20

*In re OnePoint Patient Care, LLC., Data Breach Litig.*, No. 3:24-CV-649-RGJ, 2026 WL 74403, at \*9 (W.D. Ky. Jan. 9, 2026) ............................................................................................ 9

*In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) .................... 27

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. General Motors Corp.* ("*UAW*"), 497 F.3d 615 (6th Cir. 2007) ......................................................................... 16

*Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-cv-00210, 2023 WL 6096730, at \*10 (M.D. Tenn. Sept. 18, 2023) ....................................................................................................... 26

*Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ................................................................................................................................... 23

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010) .......................... 23

*Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at \*5 (N.D. Cal. Mar. 31, 2015) ........................................................................................................................................... 28

*McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 660 (N.D. Ohio 2023) .............................. 24

*Miranda v. Xavier Univ.*, No. 1:20-CV-539, 2023 WL 6443122, at \*2 (S.D. Ohio Oct. 3, 2023) ................................................................................................................................................... 14

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 403 (6th Cir. 2017) ............................................. 25, 26

*NorCal Tea Party Patriots v. Internal Revenue Serv.*, No. 1:13CV341, 2018 WL 3957364, at \*3 (S.D. Ohio Aug. 17, 2018) .......................................................................................................... 23

*O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 2:19-CV-02378, 2020 WL 4493157, at \*16 (W.D. Tenn. Aug. 4, 2020) .................................................................................................... 17, 27

*Osman v. Grube, Inc.*, No. 3:16–CV–00802–JJH, 2018 WL 2095172, at \*2 (N.D. Ohio May 4, 2018) ........................................................................................................................................... 22

*Peregrina v. Seam Group, LLC*, No. 1:20-cv-01032-SO, Agreement, ECF No. 20-3 (N.D. Ohio March 29, 2021) ........................................................................................................................... 22

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ........................ 23

*Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at \*5 (N.D. Ohio June 15, 2010) ................................................................................................................... 27

*Sand v. Greenberg*, No. 08–CV–7840 PAC, 2011 WL 7842602, at \*3 (S.D.N.Y. Oct. 6, 2011) 22

*Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *8 (S.D. Ohio Sept. 25, 2020) ................................................................................................................... 21

*Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) ........... 27

*Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) .................................................. 13

*Shanechian v. Macy's*, No. 1:07-CV-828, 2013 WL 12178108, at *4 (S.D. Ohio June 25, 2013) ................................................................................................................................. 20

*Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) ....................................................................................................................... 17

*Smith v. Fifth Third Bank*, No. 1:18-cv-464, 2021 WL 11713313, at *3 (S.D. Ohio Aug. 31, 2021) ................................................................................................................................. 18

*Stephens v. Auto Sys. Centers, Inc.*, No. 2:21-CV-5131, 2024 WL 4577862, at *1 (S.D. Ohio Oct. 22, 2024) ........................................................................................................................ 27

*Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).............................................................. 14

*Thomas v. Mitsubishi Elec. Auto. Am., Inc.*, No. 1:24-CV-422, 2025 WL 2959527, at *4 (S.D. Ohio Oct. 20, 2025) ........................................................................................................ 9, 10

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ................................................. 14

*Volz v. Coca Cola Co.*, No. 1:10-CV-879, 2015 WL 1474958, at *2 (S.D. Ohio Mar. 31, 2015)22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) .......................................................... 11

*Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020)................................................................................................................... 22

*Wayside Church v. Van Buren Cnty., Mich.*, 103 F.4th 1215, 1223 (6th Cir. 2024) ..................... 9

*Williams v. Equitable Acceptance Corp.*, No. 18-cv-07537-NRB, 2021 WL 1625329, at *1 (S.D.N.Y. Apr. 27, 2021)..................................................................................................... 19

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ....................................................... 17

*Wright v. Premier Courier, Inc.*, No. 2:16-CV-420, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018) ............................................................................................................................ 24

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) ....................................... 12

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Fed. R. Civ. P. 23(a) ...................................................................................... 11

Fed. R. Civ. P. 23(a)(2) .................................................................................. 11

Fed. R. Civ. P. 23(a)(3) .................................................................................. 12

Fed. R. Civ. P. 23(a)(4) .................................................................................. 13

Fed. R. Civ. P. 23(b)(3) ............................................................................ 14, 15

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................. 10

**Regulations**

29 C.F.R. § 531.35 ......................................................................................... 26

## SUMMARY OF ARGUMENT

Plaintiff Ariane Rose Villarin now moves for preliminary certification of a settlement class and a Fair Labor Standards Act collective, and preliminary approval of the settlement reached in this case on behalf of herself and approximately 220 other immigrant nurses. Plaintiff's lawsuit alleges that Defendant Health Care Facility Management, LLC d/b/a CommuniCare Family of Companies ("CommuniCare") and Defendant WorldWide HealthStaff Solutions, LLC ("WorldWide") violated state and federal law by, among other things, imposing onerous conditions restricting nurses' ability to leave their employment. Plaintiff asks that the Court: (1) grant Preliminary Approval of the class Settlement; (2) certify the proposed Rule 23 Settlement Class; (3) appoint Plaintiffs' Counsel as Class Counsel and the Plaintiff as Class Representative; (4) authorize notice under the Fair Labor Standards Act ("FLSA") to similarly situated employees; (5) appoint Atticus Administration as Settlement Administrator and authorize the Administrator to distribute the proposed Notices in the manner described below; and (6) set a Final Fairness Hearing to consider final class approval of the Settlement.

The BACKGROUND section of the brief summarizes the background of the case and the terms of the proposed settlement agreement.  In exchange for the release of the Settlement Class and Collective Members' claims, Defendants will pay $1,000,000, with CommuniCare contributing $700,000 and WorldWide contributing $300,000, into a common fund from which all awards and allocated amounts will be distributed. In addition to monetary relief, a significant part of the parties' settlement here is Defendants' agreement to fully and completely forgive all debt or claims Defendants have asserted or could assert in the future related to any alleged breach of Settlement Class Members' agreements with Defendants. This relief applies to both former and current employee Settlement Class Members.

1

The ARGUMENT section of the brief sets forth Plaintiff's arguments in support of her motion.

Part I of that section explains why the proposed Class meets all the requirements for certification of a settlement class under Rule 23.

Part II details why the settlement is fair, reasonable, and adequate under Rule 23 and the *UAW* factors. *See Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. General Motors Corp.* ("*UAW*"), 497 F.3d 615 (6th Cir. 2007).

Part III explains the proposed notice plan and why it will provide effective notice to Class members.

Part IV briefly sets forth why the Court should certify a collective under the FLSA. Part V explains while the Court need not preliminarily approve the settlement under the FLSA in light of recent caselaw in this Circuit and District, it can nevertheless do so because it is a settlement of a bona fide dispute.

Finally, Part VI explains how Class Counsel chose the Settlement Administrator.

For all the reasons set forth below, the Court should grant Plaintiff's motion and enter the proposed Order preliminarily approving the Settlement.

## INTRODUCTION

Plaintiff Ariane Rose Villarin is an immigrant nurse from the Philippines who came to work in the United States under the sponsorship of Defendant Health Care Facility Management, LLC d/b/a CommuniCare Family of Companies ("CommuniCare") in July 2022. After allegedly facing difficult workplace conditions, Plaintiff Villarin brought this case on behalf of herself and approximately 220 other immigrant nurses, alleging that CommuniCare and Defendant WorldWide HealthStaff Solutions, LLC ("WorldWide") violated state and federal law by, among other things, imposing onerous conditions restricting nurses' ability to leave their employment.

After significant motion practice, exchange of documents, changes in counsel, extensive negotiations, and mediation, the parties in this case have reached a class and collective settlement (the "Settlement") of the claims in this case. Plaintiff now brings this motion asking that the Court: (1) grant Preliminary Approval of the class Settlement; (2) certify the proposed Rule 23 Settlement Class; (3) appoint Plaintiffs' Counsel as Class Counsel and the Plaintiff as Class Representative; (4) authorize notice under the Fair Labor Standards Act ("FLSA") to similarly situated employees; (5) appoint Atticus Administration as Settlement Administrator and authorize the Administrator to distribute the proposed Notices in the manner described below; and (6) set a Final Fairness Hearing to consider final class approval of the Settlement.[1]

## BACKGROUND

### I. SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that CommuniCare, through its agent WorldWide, recruits foreign-trained registered nurses, particularly from the Philippines, petitions them through the immigrant visa sponsorship process, and brings them to the United States to work for its healthcare facility clients

---

[1] All capitalized terms have the meaning defined in the parties' Settlement Agreement, which is attached to the accompanying Declaration of Hugh Baran ("Baran Decl.") as Exhibit A ("Agmt." or "Agreement").

or other healthcare facilities CommuniCare owns or manages. Second Am. Compl. ("SAC") ¶ 29, ECF No. 53. Those nurses sign letter contracts with WorldWide and CommuniCare prior to coming to the United States The nurses' contracts with WorldWide include provisions stating that if the nurse does not complete the immigration process and travel to the United States, he or she will owe WorldWide for costs incurred on his or her behalf. *Id.* ¶ 55. The nurses' contracts with CommuniCare include provisions stating that if the nurse leaves CommuniCare's employment before 36 months, he or she would have to repay CommuniCare a prorated amount for "expenses related to immigration, including certain filing fees, recruitment/agency fees, legal costs and temporary housing." *Id.* ¶ 74.

Prior to undergoing a consular interview, prospective employees received a letter-contract with CommuniCare, provided through WorldWide, which would serve as an offer of employment for purposes of obtaining a green card, and which they were required to sign in order to come to the United States to work. *Id.* ¶ 61. Plaintiff Ariane Villarin signed such a contract; her contract stated that the total amount owed to CommuniCare for leaving prior to the completion of 36 months with CommuniCare would be $16,000. *Id.* Plaintiff alleges that CommuniCare regularly took action against nurses who left prior to 36 months. In 2022 and 2023, for example, CommuniCare filed at least six breach of contract lawsuits in Ohio state court against former CommuniCare nurses, seeking damages in excess of the "advance payments" listed in their contracts. *Id.* ¶¶ 157–59.

Moreover, Plaintiff claims that during her employment with CommuniCare, her pay and that of other nurses was subject to meal period deductions even when they performed compensable work during their meal periods. *Id.* ¶¶ 101-108. As a result, the nurses were not paid for all hours and were not fully compensated for overtime hours worked. *Id.* ¶¶ 114-117.

Based on the repayment provisions contained in her contracts with CommuniCare and WorldWide, among other alleged practices, Plaintiff brought federal and state forced labor claims, federal and state racketeering claims, and a claim under the FLSA. *Id.* ¶¶ 184-347. Plaintiff's FLSA claim was brought on behalf of a proposed collective of nurses who may opt in to the action, and her class claims were brought on behalf of classes of current and former immigrant nurses. *Id.* ¶ 196.

## II.  PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

Plaintiff Villarin, represented by prior counsel, sued CommuniCare on February 27, 2023, alleging violations of the Trafficking Victims Protection Act, 18. U.S.C. § 1595 ("TVPA") and the FLSA on behalf of herself and a class and collective of similarly situated nurses.[2] ECF No. 1. Prior to CommuniCare filing an answer to Plaintiff's initial Complaint, Plaintiff filed a First Amended Complaint, on April 4, 2023. ECF No. 15. On April 25, 2023, CommuniCare moved to dismiss for failure to state a claim. ECF No. 16. Plaintiff then moved for leave to file a Second Amended Complaint. ECF No. 28.

After prior counsel withdrew and new counsel appeared, Plaintiff sought to file a new Proposed Second Amended Complaint. ECF No. 35. The Court granted that motion on March 4, 2024. ECF No. 39. On March 20, 2024, the Court exercised its discretion to rule *sua sponte* on Defendant's motion to dismiss as a matter of judicial economy, denying it in its entirety, except as to Plaintiff's unjust enrichment claim. ECF No. 42. On March 22, 2024, Plaintiff moved for leave to file her new Second Amended Complaint, which the Court granted, on April 12, 2024. ECF Nos. 43–44.

---

[2] Since the filing of the original Complaint, nearly fifty workers have joined this action as FLSA opt-in plaintiffs. ECF Nos. 3,10, 40, 52, 68. 71, 76, 78, 80.

On April 29, 2024, Plaintiff filed her Second Amended Complaint (the operative Complaint) naming WorldWide as a defendant, in addition to CommuniCare. ECF No. 53. CommuniCare answered on May 29, 2024. ECF No. 56. On July 24, 2024, WorldWide moved to dismiss for lack of jurisdiction and failure to state a claim. ECF No. 67. Plaintiff opposed that motion on September 13, 2024. ECF No. 72.

On May 20, 2025, the parties engaged in an all-day mediation session with the Hon. Elizabeth A. Callan (ret.). This mediation did not result in an immediate settlement, but the parties continued to engage in arms-length negotiations in the months that followed, including through conversations facilitated by Judge Callan. Baran Decl. ¶¶. 6-8. On or about September 25, 2025, the parties advised this Court that settlement negotiations were nearly complete. In response, Defendants' pending motion to dismiss was denied as moot. On October 13, 2025, the parties executed a term sheet as to the essential terms of the Settlement. *Id.* ¶ On February 7, 2026, the parties executed a settlement agreement. Baran Decl., Ex. 1 ("Agmt.").

## III. THE SETTLEMENT AGREEMENT

### A. Settlement Class and Collective and Release7.d Claims

The proposed Settlement would provide monetary relief to a proposed Settlement Classes and Collective defined as:

– Settlement Class: All foreign-trained registered nurses sponsored by CommuniCare through the immigration process from February 17, 2013 through October 13, 2025. The following individuals are excluded from the Settlement Class: Jedkreisky Malabanan, Sherra May Vega, Mary Jhane Engnan, Jeddalyn Ramos, Jeffrey Banayat, and Arman Candelaria.[3]

– Settlement Collective: All foreign-trained registered nurses sponsored by CommuniCare through the immigration process from February 17, 2013 through October 13, 2025, and who opt into this action to pursue claims under the Fair Labor Standards Act. The following individuals are excluded from the

---

[3] Mr. Malabanan's separate action remains before this Court. The other individuals reached individual settlements with CommuniCare after their cases were remanded to state court. Baran Decl. ¶ 10.

> Settlement Collective: Jedkreisky Malabanan, Sherra May Vega, Mary Jhane Engnan, Jeddalyn Ramos, Jeffrey Banayat, and Arman Candelaria.

Agmt. ¶¶ 2.18–2.19.

For the consideration discussed below, the Settlement Class Members who do not opt out of this action will release the Class claims made in the Second Amended Complaint or reasonably related thereto (collectively, the "Released Class Claims"). *Id.* ¶ 7.2. Settlement Collective Members will additionally release FLSA claims (and any parallel state wage and hour claims) raised on behalf of the Collective in this litigation (alleged failure to pay all compensable hours, alleged failure to pay overtime compensation for work performed during meal periods and during off-the-clock hours, alleged demand that the Settlement Collective Members pay an unlawful kickback, alleged failure to pay at least the minimum wage "free and clear" in each workweek, and alleged failure to record all time worked) (collectively, the "Released Collective Claims"). *Id.* ¶ 7.3.

### B. Monetary Relief and Settlement Allocations

In exchange for the release of the Settlement Class and Collective Members' claims, Defendants will pay $1,000,000, with CommuniCare contributing $700,000 and WorldWide contributing $300,000, into a common fund from which all awards and allocated amounts will be distributed (the "Gross Settlement Amount"). *Id.* ¶ 3.2. All settlement administration expenses, service awards for the proposed Class Representative, and proposed Class Counsel's attorneys' fees and costs, if approved by the Court, will be paid from the common fund. *Id.* ¶¶ 3.2 3.5-3.10. All remaining money—the Net Settlement Fund—will be allocated to Settlement Class and Collective Members as follows:

– First, each Settlement Class Member who does not opt out and has already paid money to CommuniCare in connection with leaving their jobs before the end of

their contract term shall each receive reimbursement payments equal to half of the amounts they paid to CommuniCare. *Id.,* Ex. 1 ¶ 1.

– Second, each Settlement Class Member who does not opt out will receive a pro rata share of the remaining Net Settlement Fund (after reimbursements) based on the number of weeks that they were employed by Defendants. *Id.,* Ex. 1 ¶ 2.

– Finally, Settlement Collective Members shall receive 10% more from the Net Settlement Fund after reimbursements than they otherwise would as Class Members, and the Net Settlement Fund shall be adjusted accordingly. *Id.*

**C. Full Relief of Alleged Debt**

In addition to monetary relief, a significant part of the parties' settlement here is Defendants' agreement to fully and completely forgive all debt or claims Defendants have asserted or could assert in the future related to any alleged breach of Settlement Class Members' agreements with Defendants. *Id.* ¶ 3.1(a). This relief applies to both former and current employee Settlement Class Members. Accordingly, Class Member nurses who leave in the future or have already left CommuniCare and WorldWide before working 36 months do not have to pay Defendants back for any alleged costs related to the claimed early departures. Defendants agree to fully forgive all amounts claimed or that could have been claimed, or could be claimed in the future, to be owed by Settlement Class Members to Defendants, due to Class Members' decisions to end their employment with CommuniCare prior to the end of the contractual term in their contracts with Defendants. *Id.* The parties believe that this non-monetary relief is worth at least an additional $1.2 million in alleged debt relief, meaning the total estimated value of the Settlement to the Class is at least $2.2 million. Baran Decl. ¶ 17.

Defendants further agree that they shall not seek to enforce of any "repayment" provisions in their contracts with Settlement Class members, and that they shall not seek to recover or collect any amount of money damages or penalties from Settlement Class members due to their past or future decision to leave their employment with Defendants prior to the end of the contractual term.

*Id.* ¶ 3.1(b). In other words, current employee Settlement Class members will be relieved from the fear of what Plaintiff alleges are the "stay-or-pay" requirements of these contract provisions.

### D. Form and Method of Notice

In addition to seeking Preliminary Approval of the Settlement here, Plaintiff also seeks preliminary certification of a class, and preliminary Court approval of the form and method of notice to class members. In the Settlement Agreement, the parties have agreed to the content of the Notices attached to the Agreement as Exhibits 2-6. The notices include communications by mail, email, and text/WhatsApp; a settlement website will also be created. *Id.* ¶¶ 5.2–5.7 & Exs. 2–5. A FLSA opt-in form will be attached to the mailed postcard, which can be torn off and returned via mail, or completed online. *Id.* ¶ 5.8 & Ex. 6. The Settlement Administrator shall verify and/or update mailing addresses and remail returned notices where possible. *Id.* ¶¶ 5.3–5.5.

### E. Opt-Out, Objection, and Exclusion

The parties' Settlement Agreement provides that Settlement Class Member may request exclusion from the Settlement Class ("opt out") by submitting a written and signed request to the Settlement Administrator for exclusion from the Settlement. *Id.* ¶ 6.1. To be effective, Settlement Class Members' exclusion requests must be sent by the Objection/Exclusion Deadline, which shall be ninety (90) days after the date of mailing of the notice. *Id.* ¶ 6.2. Any Settlement Class Member who submits an exclusion request may withdraw that request by submitting a signed request to withdraw his or her exclusion request by the Objection/Exclusion Deadline. *Id.* ¶ 6.3.

Class Members may also object to the Settlement Agreement. Potential objectors to the Settlement must first object in writing by submitting a written statement of the basis for the objection to the Settlement Administrator before the Objection/Exclusion Deadline. *Id.* ¶ 6.6. Class Counsel shall file any objections with the Court. *Id.* If more than 10% of the Settlement Class elect

to opt-out of the Settlement, each Defendant has the option to cancel the Settlement Agreement. *Id.* ¶ 6.7.

### F. Notice Period, Final Approval, and Payments.

The notice sought to be approved here, as set forth in the Settlement Agreement, provides for a notice period—during which proposed Settlement Class Members may opt out of the Settlement, object, or submit a consent form to join—of ninety (90) days. *Id.* ¶ 6.1. The parties will move for Final Approval within twenty days of the notice period closing. *Id.* ¶ 8.7, and will move for Court approval of attorneys' fees and costs in advance of the Final Approval date as well.

Under the Agreement, Defendants shall pay the total Gross Settlement Amount to the Qualified Settlement Fund (QSF) account established by the Settlement Administrator within twenty-one (21) days of Final Approval of the Settlement Agreement by the Court. *Id.* ¶ 3.2. The Administrator will distribute the funds to class members. *Id.* Any unclaimed amounts remaining in the Fund at the conclusion of a 180-day period shall be paid to the designated *cy pres* beneficiary, the Human Trafficking Legal Center. *Id.* ¶ 3.15; *see also* Baran Decl. ¶¶ 51-52 (discussing *cy pres* beneficiary).

### STANDARD OF REVIEW

"[A]t the preliminary-approval stage the Court's job is to determine whether the proposed class likely meets Rule 23's requirements and the proposed settlement is likely to be a 'fair, reasonable, and adequate' disposition of the class claims, all subject to later confirmation at the final approval hearing." *Thomas v. Mitsubishi Elec. Auto. Am., Inc.*, No. 1:24-CV-422, 2025 WL 2959527, at *4 (S.D. Ohio Oct. 20, 2025).

*Preliminary certification standard.* In considering whether to preliminarily certify a settlement class, "rigorous analysis under Rule 23(a)–(b) is not necessary," *In re OnePoint Patient Care, LLC., Data Breach Litig.*, No. 3:24-CV-649-RGJ, 2026 WL 74403, at *9 (W.D. Ky. Jan. 9,

2026) (citing *Wayside Church v. Van Buren Cnty., Mich.*, 103 F.4th 1215, 1223 (6th Cir. 2024)); "The question is simply whether 'the court will likely be able to ... certify the class for purposes of judgment on the proposal.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(1)(B)). To do so, courts must determine the proposed settlement class satisfies all four Rule 23(a) requirements (numerosity, commonality, typicality, and adequacy) and at least one of the Rule 23(b) conditions. *Thomas*, 2025 WL 2959527, at *5.

*Preliminary approval standard.* In considering under Rule 23(e)(2) whether a settlement is "fair, reasonable, and adequate," the Court must consider: "(1) the class representatives and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the settlement adequately compensates the class; and (4) the settlement treats class members equitably relative to each other." *Thomas*, 2025 WL 2959527, at *7 (citing *Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2023 WL 8811499, at *10 (S.D. Ohio Dec. 20, 2023)).

*FLSA notice standard.* To approve notice under the FLSA to similarly situated employees, courts must determine whether plaintiffs have "show[n] a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). At this stage, approval of the Settlement under the FLSA is not required, but would be appropriate given that the settlement represents a resolution of a *bona fide* dispute, as discussed in Part V below.

The parties' proposed Settlement Class, proposed Settlement, and proposed Collective for notice purposes satisfies these standards.

## **ARGUMENT**

## I. **THE COURT SHOULD CERTIFY THE RULE 23 SETTLEMENT CLASS**

A class may be certified only when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The proposed Settlement Class meets these requirements.

### A. The Proposed Class is Sufficiently Numerous.

Under Rule 23, numerosity is presumed where a class has at least 40 members. *Adams v. Anheuser-Busch Companies, Inc.*, No. 2:10-cv-826, 2012 WL 1058961, at *3–4 (S.D. Ohio Mar. 28, 2012). Here, there are 220 Settlement Class Members, and numerosity is satisfied.

### B. The Proposed Class Shares Common Questions of Law and Fact.

Rule 23 requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Class members need not share all questions relevant to their claims and "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). Commonality depends upon "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation," and the case must involve a dispute "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, there are numerous questions common to the Settlement Class, including:

– Whether the Companies obtained the labor of employees by using serious harm or threats of serious harm in violation of the TVPA;
– Whether the Companies' uniform practices as to the commitment period, monetary penalty, and work conditions work constitute attempted labor trafficking in violation of the TVPA; and
– Whether the Companies knowingly recruited employees and knowingly benefitted from their violations of the TVPA.
– Whether the Companies engaged in a related and continuous scheme of misconduct through their recruitment and employment of foreign-trained nurses.
– Whether the wage and hour practices alleged in the Second Amended Complaint violated state wage laws.

These common questions arise because of the uniform circumstances under which the members of Settlement Class worked, including form contracts and workplace policies that Plaintiff contends resulted in a set of employer-mandated conditions that employees were allegedly forced to abide by under the same threat of legal action and serious financial harm.

While the parties disagree as to the answers to these questions, they agree that the answers to each question would be the same for all Settlement Class Members, and that these questions could be resolved by examining Defendants' common policies and practices. Therefore, commonality is satisfied. *See, e.g., Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (commonality satisfied where the plaintiffs challenge "a single practice or course of conduct"); *Carmen v. Health Carousel, LLC*, No. 1:20-cv-313, 2025 WL 892586, at *8 (S.D. Ohio Mar. 24, 2025) (finding commonality satisfied, at final approval, in case involving similar allegations by Filipino nurses allegedly subject to stay-or-pay contracts, because "every class member 'was subject to the same allegedly coercive practices and contractual terms.' So 'the core questions in this case could be answered [using] common proof"—that is, with evidence shared by every class member.") (citation omitted).

**C. The Proposed Class Representative is Typical of the Proposed Class.**

Typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Carmen*, 2025 WL 892586, at *8 ("typicality requires the named plaintiffs' claims to jibe with the class's."). Here, the claims brought by Ms. Villarin arise from the same set of facts as those of the Settlement Class Members. Ms. Villarin and all Settlement Class Members are nurses from the Philippines, and they were all subjected to common policies surrounding departure before the end of their contract periods and the requirement to pay for leaving early. Thus, the proposed Class Representative is typical. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007); *Carmen*, 2025 WL 892586, at *8

13

("the named Plaintiffs' 'claims arise from the same set of facts' as the class members" and so "typify claims that are common to the class.").

### D. The Proposed Class Representative and Class Counsel are Adequate.

Parties seeking settlement approval must demonstrate "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in the Sixth Circuit consider two criteria for determining adequacy of a class representative: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). The Class Representative and Class Counsel proposed meet both requirements.

First, as set forth above, Ms. Villarin has common interests with unnamed members of the Class because her claims and legal interest are aligned with those of the other members of the Settlement Class. *See supra* at III.B.2. Ms. Villarin has also demonstrated her commitment to vigorously prosecuting this case and fulfilled her duties to the class by, among other things, initiating this lawsuit, communicating regularly with Class Counsel, attending mediation, and reviewing the proposed Settlement. Baran Decl. ¶¶ 29-33. She has directed and questioned Class Counsel on aspects of the proposed Settlement to make sure it is sufficient for Settlement Class Members. *Id.* She is informed of and approves of this Settlement and has no claims against Defendants other than those raised in the instant case. She is therefore an adequate class representative. *Campbell v. Bukhari Grp. LLC*, No. 22-CV-2813 (PK), 2025 WL 1874485, at *5 (E.D.N.Y. July 8, 2025) ("An adequate class representative is one who has an interest in vigorously pursuing the claims of the class and no interests antagonistic to the interests of other class members.") (internal quotations omitted).

Proposed Class Counsel are experienced class action and employment lawyers, and have experience representing nurses with trafficking claims such as those at issue here. Class Counsel has significant experience in class and collective action litigation and settlements, including those under the FLSA, TVPA, and RICO. Baran Decl. ¶¶ 34-50. They have zealously represented the proposed Settlement Class throughout this case and settlement negotiations and will continue doing so through the conclusion of the settlement process. *Id.* ¶¶ 4-9; *Miranda v. Xavier Univ.*, No. 1:20-CV-539, 2023 WL 6443122, at *2 (S.D. Ohio Oct. 3, 2023) (finding adequacy where "Plaintiffs are represented by extremely qualified counsel with extensive experience prosecuting class actions."); *Bailey v. Verso Corp.*, 337 F.R.D. 500, 507 (S.D. Ohio 2021) (noting that "'The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation[.]'") (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)).

Proposed Class Counsel have also achieved a seven-figure settlement for the Class at mediation, with meaningful other relief. In sum, the qualification of proposed Class Counsel supports the adequacy element of the certification analysis here.[4]

### E. Common Issues Predominate Over Any Individual Issues and the Class Action Mechanism is Superior.

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Individual questions are those where class members "will need to present evidence that varies from member to member," while common questions are those where "the same evidence will suffice

---

[4] More information about each Class Counsel firm and the lawyers leading this litigation are provided in the accompanying declaration.

15

for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). As discussed above, there are numerous common questions in this matter. *See supra* at III.B.2. Many, if not all, of these questions focus on the legality of Defendants' employment contracts. Because the contracts at issue are form contracts, there are unlikely to be individualized inquiries that predominate.

Before certifying a class action under Rule 23(b)(3), the Court must also consider whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (listing considerations). Resolution of this matter as a class action is also superior for settlement purposes as it will achieve economies of time, effort, and expense, and promote uniformity of results. Here, the Settlement Class Members are recent immigrants to the United States who may not choose to spend resources and time on individual litigation at this stage of their lives here, and for whom litigation is likely to be cost-prohibitive. *See Beattie*, 511 F.3d at 567 (when "the amount of a single class member's potential recovery [is] small… class resolution [is] superior to other methods of adjudicating the controversy"). Counsel are not aware of any evidence that Class Members are interested in individually controlling the prosecution of separate actions; indeed, approximately 20% of the Class already opted into this action as FLSA plaintiffs. Baran Decl. ¶ 25; *see* Fed. R. Civ. P. 23(b)(3)(A)-(C). Finally, because this class is being certified for settlement purposes only, manageability is not a concern. *See Amchem*, 521 U.S. at 620. For all of these reasons, the Court should certify the Settlement Class.

## II. THE SETTLEMENT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION FOR THE CLASS.

In determining whether a proposed class action settlement agreement is "fair, reasonable, and adequate," courts consider whether:

A. the class representatives and class counsel have adequately represented the class;
B. the proposal was negotiated at arm's length;

    C.  the relief provided for the class is adequate, taking into account:
  1. the costs, risks, and delay of trial and appeal;
  2. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  3. the terms of any proposed award of attorney's fees, including timing of payment; and
  4. any agreement required to be identified under Rule 23(e)(3); and

    D.  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in this Circuit analyze these factors together with factors enumerated in *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. General Motors Corp.* ("*UAW*"), 497 F.3d 615 (6th Cir. 2007). *See, e.g.*, *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-cv-00411, 2023 WL 3204684, at *3 (S.D. Ohio May 2, 2023) (citing *UAW*). Those factors are: "(1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest." *UAW*, 497 F.3d at 631.

The bar at the preliminary approval stage is lower than at final approval. *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. 2020). In deciding whether to grant preliminary approval of a settlement, courts examine the proposed settlement for "obvious deficiencies" before determining whether it is in the "range of possible approval." *Id.* (citation omitted).

Here, the parties' Settlement Agreement meets the standards for preliminary approval of a class settlement. It is fair, reasonable, and adequate. The Court should therefore grant preliminary approval.

**A.  Plaintiff and Class Counsel Have Adequately Represented the Class and Support the Proposal - Rule 23(e)(2)(A) and UAW Factor 5.**

Plaintiff Villarin and proposed Class Counsel have carefully evaluated the strengths and weaknesses of the Class's claims, and the benefits of the proposed Settlement, and they believe

that the Settlement should be approved. "The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) (*quoting Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)). Here, the judgment of Class Counsel is that the proposed Settlement is a fair resolution of this dispute and that the Settlement is in the best interest of the parties.

**B. The Proposal Was Negotiated at Arm's Length Without Fraud or Collusion - Rule 23(e)(2)(B) and *UAW* Factor 1.**

The parties' Settlement Agreement was reached without fraud or collusion. Parties engaged in settlement negotiations for approximately five months before participating in mediation with Judge Callan in February 2025. Baran Decl. ¶¶ 6-8. After mediation, parties continued arms-length negotiations between counsel, with assistance from Judge Callan for nearly eight months, exchanging several term sheets before executing the final version in October 2025. *Id.* ¶ 7. Counsel aver that all negotiations between them were at arm's length.[5] *Id.* ¶ 3. This weighs in favor of approval of the Settlement. *See Clark v. Miller Valentine Partners Ltd.*, No. 1:20-cv-295, 2023 WL 5087233, at *5 (S.D. Ohio Aug. 8, 2023) (finding that "months of analysis and considerable arms-length good-faith negotiations between the parties" supports approval of class settlement); *Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 151 (S.D. Ohio 1992) ("[A]n initial presumption of fairness exists if the settlement is recommended by class counsel after arms-length bargaining.").

**C. The Proposal Provides Adequate Relief to the Settlement Class – Rule 23(e)(2)(C) and UAW Factors 2-4.**

---

[5] That no portion of the Gross Settlement Fund will revert to Defendants, Agmt. ¶ 3.4, supports the showing that there is no collusion in this settlement. *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 2:19-CV-02378, 2020 WL 4493157, at *16 (W.D. Tenn. Aug. 4, 2020) (identifying reversion of funds to defendants as a "warning sign" of collusion) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

**1. The Settlement Represents a Fair Compromise that Provides Significant Monetary and Non-Monetary Benefits to the Class.**

Courts have recognized that settlements are inherently compromises and that even a fraction of maximum damages can be adequate for approval purposes. *See, e.g.*, *Smith v. Fifth Third Bank*, No. 1:18-cv-464, 2021 WL 11713313, at *3 (S.D. Ohio Aug. 31, 2021) (granting final approval of a settlement with relief that represents "33% of the 'best-day damages'").

Here, Class Members will receive significant relief. First, as to monetary relief, those Settlement Class Members who paid CommuniCare for, as Plaintiff contends, leaving before the end of their contractual period will receive a 50% reimbursement of those payments. From the remaining Settlement Fund (after accounting for attorneys' fees, costs, and costs of administration), all Class Members—including current employees and former employees, regardless of whether they left prior to the end of their contract term or paid any damages to CommuniCare—will receive an additional settlement amount based on the number of weeks they worked. These damages represent alleged emotional distress, lost earning potential, and other compensatory damages under the TVPA, and liquidated damages for failure to pay wages "free and clear" under the FLSA.

Based on Plaintiff's counsel's analysis of Defendants' data, Plaintiff's counsel anticipate that per person amounts for Settlement Class Members, prior to applicable tax withholdings, will average approximately $2900, with a high of approximately $8,100 and a low of approximately $144, with a median of approximately $1987. Baran Decl. ¶ 53. For those receiving reimbursements of payments made to CommuniCare, Plaintiff's counsel anticipate the average recovery will be approximately $6639. *Id.* For those who did not make payments to CommuniCare, Plaintiff's counsel anticipate their average recovery will be approximately $1675. *Id.*

This Agreement also provides nearly all of the non-monetary relief initially demanded. Indeed, the non-monetary relief in this Agreement, including relief from disputed debt for all

former employees, is more expansive than that in recent comparable settlements involving similar fact patterns. *See* Baran Decl. ¶ 16. This supports approval. *See e.g., Carmen*, 2025 WL 892586, at *12 (approving settlement where, "on the non-monetary side, the debt relief is automatic because Health Carousel will simply cease collection, and the programmatic changes are already in progress.") (cleaned up); *see also Williams v. Equitable Acceptance Corp.*, No. 18-cv-07537-NRB, 2021 WL 1625329, at *1 (S.D.N.Y. Apr. 27, 2021) (non-monetary relief including debt relief was provisionally fair, reasonable, and adequate).

The non-monetary relief here has material value to current employee Settlement Class members should they choose to end their employment without Good Reason before the end of the contract term. For example, Ms. Villarin faced potential damages of at least $16,000, and the Companies asserted damages of up to $100,000 in similar actions against other nurses. SAC ¶¶ 61, 159. And that does not account for her potential costs in defending such an action. Under the Agreement, Defendants are canceling all alleged debt that they have asserted or could assert against Ms. Villarin and other Settlement Class Members. Accordingly, Plaintiff contends that the Agreement's non-monetary provisions reduce at least $1.2 million, and potentially millions more (in the aggregate) that Class Members were or could have been required to pay in judgments and attorneys' fees/costs if they left their jobs before the end of the contract term. This non-monetary relief applies to both former and current employee Class Members. This is a very significant benefit to the Class – one that is likely to have very meaningful effects on Class Members, as it gives them certainty as to what will happen if they were to leave their jobs before the end of the contract term. In other words, the nonmonetary relief here mitigates the threat of financial ruin that Plaintiffs allege has kept Settlement Class members from leaving their jobs in violation of the

TVPA. This is an outstanding non-monetary result that goes beyond similar non-monetary relief achieved in comparable cases, and which strongly supports preliminary approval.

### 2. Costs, Risks, & Likely Duration of Litigation Support Approval.

Courts recognize that wage and hour class actions are "inherently complex" and that settlement allows parties to "avoid[] the costs, delays, and multitude of other problems associated with them." *Clark v. Pizza Baker, Inc.*, No. 2:18-CV-157, 2022 WL 16554651, at *4 (S.D. Ohio Oct. 31, 2022) (citing *Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022). The same is true of TVPA class actions. The parties also acknowledge that this case presents novel and complex legal issues which create meaningful risk for all parties should this matter proceed to litigation. *See generally In re Nationwide Fin. Servs. Litig.,* No. 2:08-CV-00249, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009) (noting that the risk of continued litigation includes the risk that there could be no recovery at all); *Shanechian v. Macy's*, No. 1:07-CV-828, 2013 WL 12178108, at *4 (S.D. Ohio June 25, 2013) (noting difficulty of proving both liability and damages at trial even where plaintiffs prevailed on previous motion to dismiss and class certification rulings).

Moreover, absent settlement, the Defendants would challenge class certification, creating a risk that weighs in favor of approval. *See In re Netflix Priv. Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) (fact that defendant would "likely vigorously oppose class certification" weighs in favor of approval of a settlement; *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F.Supp.2d 259, 268–69 (S.D.N.Y. 2012) ("The risk that Defendants could in fact succeed in their efforts to decertify the class militates in favor of settlement approval."). Plaintiff also faces significant risk and complexity related to damages. In sum, the costs, risk, and delay—including the complexity, expense and likely duration

21

of the litigation and risks of establishing liability and damages, as well as maintaining a class—support approval.

### 3. The Proposed Settlement is Effective and Equitable – Rule 23(e)(2)(C)(ii), (D).

The Settlement is also equitable. On this issue, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendments.

Here, the Settlement will reimburse all of the 55 Settlement Class Members who paid money to CommuniCare for leaving before the end of their contract term for half of the amount paid, provided they do not opt out. Agmt., Ex. 1 ¶ 1. The remainder of the Net Settlement will be distributed to Settlement Class Members proportionally based on the number of weeks they were employed by Defendants, with *pro rata* calculations adjusted so that Settlement Collective Members receive 10% more than they otherwise would. *Id.*, Ex. 1 ¶ 2. This kind of arrangement, where the amount the class and collective members would receive under the Settlement is based on the "differences among their claims" and "scope of the release," as well as the type and extent of alleged injuries, is consistently found by courts to be equitable for purposes of settlement approval. *See, e.g.*, Carmen, 2025 WL 892586,at *13; *see also Hawes*, 2023 WL 8811499, at *12 (finding distribution scheme to treat class members equitably even though it did not treat them equally).

This "pro rata" method of allocating funds is also entirely equitable. *See Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *8 (S.D. Ohio Sept. 25, 2020) (*pro rata* distribution "ensures an equitable distribution of settlement proceeds that is directly tied to the

claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds"); *Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-02600-SHL-tmp, 2023 WL 6466398, at *5 (W.D. Tenn. Oct. 4, 2023) ("Courts generally find that distributing settlement funds on a pro rata basis… is fair and reasonable.") (citations and emphasis omitted). Class and Collective Members who will receive a relatively smaller *pro rata* share of the Net Settlement Fund will nonetheless benefit from valuable non-monetary relief in the form of Defendants' agreement not to further enforce the repayment provisions in their contracts.[6] *See Volz v. Coca Cola Co.*, No. 1:10-CV-879, 2015 WL 1474958, at *2 (S.D. Ohio Mar. 31, 2015) (recognizing value of injunctive relief).

Finally, the $15,000 payment to Plaintiff as a service award for her representation of the Class and Collective, in addition to any payment she may otherwise receive under the distribution method described above, is fair as it compensates Plaintiff for her service as the sole class representative. Service awards have "the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." and are regularly authorized by courts as "efficacious ways of encouraging member of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Osman v. Grube, Inc.*, No. 3:16–CV–00802–JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (quoting *Hadix*

---

[6] It is also fair that Settlement Collective Members, who choose to release their FLSA claims, will receive more than those who do not. *See, e.g., Peregrina v. Seam Group, LLC*, No. 1:20-cv-01032-SO, Agreement, ECF No. 20-3 (N.D. Ohio March 29, 2021) at PAGEID 218 ("the initially weighted amounts shall be reduced by 10% for Settlement Class Members who do not timely become Settlement Collective Members") and PAGE ID 224 (releasing TVPA, Title VII, Section 1981 claims for Settlement Class Members and a additionally releasing FLSA claims for Settlement Collective Members), Final Approval Order, ECF No. 26 (N.D. Ohio Aug. 30, 2021) (granting approval); *Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2021 WL 1214501, at *12 (E.D. Ky. Mar. 30, 2021) ("20% premium" for those who had already opted into the action); *Combs v. TruGreen Ltd. P'ship*, No. 1:08-cv-489, 2010 WL 11636094, at *6 (S.D. Ohio Sept. 2, 2010); *see Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) ("Some class members will ostensibly release more claims than others, but this discrepancy derives from the fact some class members will be opt-in plaintiffs who more broadly release claims related to the FLSA.").

*v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)); *see also Sand v. Greenberg*, No. 08–CV–7840 PAC, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting"). This Court has regularly approved similar service awards for class representatives. *See, e.g., Emch v. Cmty. Ins. Co.*, No. 1:17-CV-00856, 2021 WL 9096702, at *1 (S.D. Ohio Aug. 9, 2021) (Barrett, J.) (approving service award and noting that courts in Sixth Circuit have approved "much higher" awards, including one of $35,000); *NorCal Tea Party Patriots v. Internal Revenue Serv.*, No. 1:13CV341, 2018 WL 3957364, at *3 (S.D. Ohio Aug. 17, 2018) (Barrett, J.) (approving $10,000 service award).

### 4. The terms of any proposed award of attorney's fees, including timing of payment, are fair - Rule 23(e)(2)(C)(iii).

Class Counsel anticipates requesting no more than one-third of the Gross Settlement Amount as an all-inclusive award of attorneys' fees, plus a reasonable amount of out-of-pocket litigation costs and expenses. Agmt. ¶ 3.5. This amount is in line with attorneys' fees typically approved by courts in this Circuit. *See, e.g., Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) (approving attorneys' fees equaling 33% of the common fund); *Garner Props. & Mgmt. v. City of Inkster*, 2020 WL 4726938, No. 17-cv-13960, at *10 (E.D. Mich. Aug. 14, 2020) (same). Class Counsel's anticipated request for fees is a reasonable reflection of "the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010). Defendants have not agreed to a clear-sailing provision for any of the requested awards. In addition, the costs

of settlement administration together are expected to be no more than $12,000, or 1.2% of the Gross Settlement Amount. Baran Decl. ¶ 19 & Ex. B (settlement administrator proposal).

Class Counsel will file a fee petition in advance of the final fairness hearing scheduled in this matter.

### 5. There are no agreements required to be identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv).

There are no side agreements to be disclosed and the Settlement Agreement is the parties' only agreement. Baran Decl. ¶ 23.

### 6. The reaction of the absent Class Members will be known after notice and the public interest supports settlement – *UAW* Factors 6 and 7.

Settlement Class Members have not yet had the opportunity to weigh in on this Settlement because notices have not yet been distributed. The parties will inform the Court of Class Members' reaction to the Settlement with their Final Approval brief. That said, approval of this settlement is in the public interest. Public policy generally favors settlement of class action lawsuits. *Wright v. Premier Courier, Inc.*, No. 2:16-CV-420, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018) (quoting *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007). The Settlement "confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources," all of which supports approval. *Id.*

## III. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN AND THE CLASS NOTICES.

Rule 23(b)(3) requires that class members receive "the best notice that is practicable under the circumstances." *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 660 (N.D. Ohio 2023) Plaintiffs' proposed method of distribution and proposed notices meet this standard.[7] *See, e.g.,*

---

[7] Class Counsel have designed the long-form and email notices in line with standards and templates developed by the Impact Fund, an organization that has invested considerable time and resources into studying ways to improve class action notices such that they provide more effective, understandable notice. Baran Decl. ¶ 8. While the Class Members all speak English, the notices will also be translated and available on the Settlement Website in Filipino.

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 26, 290 (6th Cir. 2016) (finding a "dual email and postcard mailing approach targeting individual class members" to be appropriate). Further, the proposed notices include all of the information required by Fed. R. Civ. P. 23(c)(2)(B). (*See supra* III.D.) The notices inform Settlement Class and Collective Members of the terms of the Settlement and their rights and deadlines in which to exercise them, contains details about the definition of the Settlement Class and Collective, proposed Class Counsel, the size of the settlement fund, the methodology for submitting a Claim Form, opting out, objecting, the potential size of Class Counsel's request for attorneys' fees and costs, and the date and location of the final approval hearing. Accordingly, the parties respectfully request that the Court approve the dissemination of the Class Notices.

## IV. THE COURT SHOULD AUTHORIZE FLSA NOTICE.

In order for the Parties to proceed with their proposed settlement of the FLSA collective action, the Court at this stage is only required to approve FLSA notice to putative collective members. *See Highman v. Northstar Cafe Easton, LLC*, No. 2:23-CV-1757, 2025 WL 388709, at *4 (S.D. Ohio Feb. 4, 2025) (*Highman I*), *notice approved*, 2025 WL 634439, at *3 (S.D. Ohio Feb. 27, 2025) (*Highman II*). Courts in the Sixth Circuit permit putative class members to become parties to an FLSA suit after they opt in and the district court determines that the employees are "similarly situated." *Clark*, 68 F.4th at 1009. In order to approve this notice under the FLSA, plaintiffs must "show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. Courts find plaintiffs to be "similarly situated" if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 403 (6th Cir. 2017). "[F]or a district court to facilitate notice of an FLSA suit to other employees, the

26

plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Clark*, 68 F.4th at 1011.

Here, the Settlement Class Members who are eligible to become Settlement Collective Members are all former employees who were subject to form contracts and workplace policies implemented by CommuniCare and WorldWide, including the requirement the requirement to pay for leaving early. This set of common facts binds the proposed Settlement Collective together. Under the FLSA, wages must be paid "free and clear," and it is unlawful to require an employee to kick back to the employer "directly or indirectly … for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35; *see e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-CV-146, 2019 WL 5725043, at *2 (S.D. Ohio Nov. 5, 2019) ("The wage requirements of the [FLSA] will not be met where the employee 'kicks back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."). Plaintiff alleges that Defendants' threats to enforce the repayment provision in her contract violated the FLSA and that other employees were subject to the threatened or actual enforcement of the same provision. There is therefore a "strong likelihood" that these nurses are similarly situated to Plaintiff. *Clark*, 68 F.4th at 1011; *see also Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-cv-00210, 2023 WL 6096730, at *10 (M.D. Tenn. Sept. 18, 2023) ("Plaintiffs are similarly situated if they can demonstrate that they suffered from 'a single FLSA-violating policy' instituted by the employer defendant, or if their 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'") (alteration in original) (quoting *Monroe*, 860 F.3d at 398). Moreover, Defendants also agree, for settlement purposes, that there is a strong likelihood that these nurses are similarly situated and thus do not oppose this motion.

For these reasons, the Court should issue FLSA notice for settlement purposes to similarly situated nurses, and approve the proposed notices in that respect, as well as the FLSA opt-in form. *See* Agmt. Ex. 6 (proposed opt-in form, which shall be online and attached to the postcard notice).

## V.   THE SETTLEMENT RESOLVES A *BONA FIDE* FLSA DISPUTE.

The Court is not required at this point to review or approve the parties' Settlement Agreement under the FLSA. For example, in approving FLSA notice to similarly situated employees for settlement purposes in *Highman II*, the court (Sargus, J.) did not address the merits of the FLSA portion of the settlement.[8] 2025 WL 634439, at *3.

However, to the extent that this Court believes such an analysis is required at this stage, the Settlement clearly represents the resolution of a *bona fide* dispute between the parties with respect to Plaintiff's FLSA claims.   For purposes of the FLSA, a *bona fide* dispute exists when "there are legitimate questions about 'the existence and extent of [d]efendant''s FLSA liability.'" *O'Bryant*, 2020 WL 7634780, at *7 (*quoting Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016). The existence of such a dispute serves "as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA." *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010). And because settlements are "a preferred means of dispute resolution" courts generally apply a "strong presumption" in favor of settlement in class and

---

[8] And in fact, while the Sixth Circuit has not directly addressed the question whether judicial approval of FLSA settlements is required, multiple courts in this District have recently held that judicial approval is neither required nor authorized under the FLSA, including with respect to settlements of FLSA collective actions. *See Gilstrap v. Sushinati LLC*, No. 1:22-cv-434, 2024 WL 2197824, at *1 (S.D. Ohio May 15, 2024); *Cummins v. Midmark Corp.*, No. 3:23-CV-277, 2024 WL 3405458, at *1 (S.D. Ohio July 9, 2024); *Cataline v. Beechmont Brewing, LLC*, No. 1:23-CV-621, 2024 WL 4313715, at *1 (S.D. Ohio Sept. 26, 2024); *Stephens v. Auto Sys. Centers, Inc.*, No. 2:21-CV-5131, 2024 WL 4577862, at *1 (S.D. Ohio Oct. 22, 2024); *Butler v. Vill. Caregiving, LLC*, No. 2:22-CV-4359, 2025 WL 1513334, at *1 (S.D. Ohio May 28, 2025). In the nurse class/collective action settlement involving similar allegations reached in *Carmen v. Health Carousel*, the court did not address the FLSA aspect of the settlement, apart from briefly analyzing whether Rule 23 approval was impacted by the FLSA component of the case. *See Carmen*, 2025 WL 892586, at *14.

collective action lawsuits. *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001).

Accordingly, to the extent the Court were to weigh the merits of the FLSA component of the Settlement at this stage, it should approve it because it represents the resolution of a *bona fide* dispute, and for the same reasons articulated above. *See* Pt. II, *supra.*

## VI.   THE COURT SHOULD APPOINT THE SETTLEMENT ADMINISTRATOR AND SCHEDULE A FINAL FAIRNESS HEARING.

Finally, the Court should appoint Atticus Administration as Administrator to facilitate the notice procedure described above, and the Court should schedule a final fairness hearing in this matter to finally approve the Class Settlement and to finally certify a Settlement Class.

Atticus was selected as the most cost-effective among three bids for administration. *See* Baran Decl., Exs. 2 & 3 (declaration of Atticus CEO setting forth Atticus Administration's credentials, and Atticus's proposal) & ¶ 18 (describing bid process). This procedure ensured that Settlement Class Members are not overpaying for the cost of administration. *See, e.g., Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 3446596, at *6 (E.D. Mich. Aug. 11, 2017) ("Counsel informs the Court that in selecting a settlement administrator, they sought competitive bids from three reputable firms and determined that Epiq's bid was fair and reasonable.") (cleaned up); *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at *5 (N.D. Cal. Mar. 31, 2015) ("Class Counsel obtained bids from several class administrators to ensure the costs ultimately charged were reasonable.").

In accordance with the parties' Settlement Agreement, Plaintiff requests that the Final Fairness Hearing be held between 112 days and 120 days from Preliminary Approval, or as soon thereafter as available on the Court's Calendar. *See* Proposed Order.

## CONCLUSION

For all of the reasons stated above, Plaintiff respectfully requests that the Court enter the proposed Order and: (1) grant Preliminary Approval; (2) certify the proposed Rule 23 Settlement Class; (3) appoint Plaintiff's Counsel as Class Counsel and the Plaintiffs as Class Representatives; (4) authorize notice under the FLSA to similarly situated employees; (5) appoint Atticus Administration as Settlement Administrator and authorize it to send and post the proposed Notices to the proposed Settlement Classes and Collective; and (6) set a Final Fairness Hearing for no earlier than 112 days and no later than 120 calendar days following the grant of Preliminary Approval.

Dated: New York, New York
      February 12, 2026

           KATZ BANKS KUMIN LLP
           /s/ Hugh Baran
           Hugh Baran
           NY Bar No. 5560420
           Susanna Barron
           D.C. Bar No. 1673735
           *Admitted S.D. Ohio pro hac vice*
           111 Broadway, Suite 1403
           New York, NY 10006
           Tel No. (646) 759-4501
           Baran@KatzBanks.com
           Barron@KatzBanks.com

           KAKALEC LAW PLLC
           Patricia Kakalec
           NY Bar No. 2607695
           *Admitted S.D. Ohio pro hac vice*
           80 Broad Street, Suite 703
           New York, NY 10004
           Tel No. (212) 705-8730
           Patricia@KakalecLaw.com

           THE LAW FIRM OF SHIHAB & ASSOCIATES, CO.,
           LPA

GHASSAN "GUS" M. SHIHAB
OH Bar No. 0061098
65 East State Street, Suite 1550
Columbus, OH 43215
Tel. No. 877-479-4872
Email: gus@shihab.law

TOWARDS JUSTICE
Juno Turner
NY Bar No. 4491890
*Admitted S.D. Ohio pro hac vice*
1580 N Logan St.
Ste 660 PMB 44465
Denver, CO 80203
Tel. No.: 720-441-2236
Email: juno@towardsjustice.org

THE LAW OFFICES OF MAGEN E. KELLAM, P.A.
MAGEN E. KELLAM
FL Bar No. 0848611
*Admitted S.D. Ohio pro hac vice*
808 Wiggins Pass Road, Suite 204
Naples, FL 34110
Tel. No. 239-260-4622
Email: magenk@kellamlegal.com

*Attorneys for Plaintiff and the Putative*
*Class and Collective*